# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

Ms. Kathleen Dickerson, Esquire
Office of Defense Services
45 The Green
Dover, DE 19901

Mr. Christopher P. Gardner II, DAG
Department of Justice
102 West Water St.
Dover, DE 19901

Submitted: May 15, 2026
Decided: May 20, 2026

*RE:* ***State v. Clark*, I.D. No. 2509003414**

Counsel:

Mr. Clark moves to compel the State to produce slides and other material used by the Delaware State Police Crime Lab (hereinafter, "Crime Lab") to train police officers to operate the Intoxilizyer 9000 (hereinafter, "the 9000"). The 9000 is an updated and improved alcohol breath testing device used by police agencies around the State in driving under the influence investigations.

Mr. Clark, charged with a felony DUI, contends that he belched during the twenty-minute observation period prior to his test. As a result, he contends that any written material or training guidelines in the State's possession addressing the 9000's operator instructions are material to the preparation of his defense.

The State opposes producing the material. At the outset, it contends that the 9000's manufacturer, CMI, Inc. ("CMI"), provided no operator or user manual for

the device. Rather, the Crime Lab has prepared the only documents explaining these procedures. It has done so for the purpose of training the device's officer-operators. Accordingly, the training slides are the only written documents in the State's possession that provide operating procedures for the 9000.

The State's primary reason for resisting production is that it contends the materials are exempt from disclosure because of copyright protection due CMI.[1] It relies on Superior Court Criminal Rule 16(b)(2)(A)'s exception to criminal discovery when doing so.

The Court has reviewed the materials in camera to resolve the dispute. For the reasons to follow, these slides, which are the only existing written explanation of operator and usage procedures for the 9000, are material to the preparation of Mr. Clark's defense. Furthermore, they do not fit within the exception to criminal discovery that the State relies upon. Accordingly, Mr. Clark's motion to compel is granted.

## BACKGROUND

The State charges Mr. Clark with a third offense DUI. CMI manufactured the 9000 and a Dover police officer used the machine to test Mr. Clark's blood alcohol level after his arrest. Mr. Clark contends that he burped or belched within the twenty-minutes preceding his test. Thus, he argues that the operating guidelines contained in the slides are material to his defense because he believes they recognize a mandatory pre-test observation period.

The question regarding whether the long-recognized twenty-minute observation period is (1) foundational for a 9000 result (given the 9000's internal screenings for excess mouth alcohol), or (2) simply goes to the weight of the

---

[1] At first, the State mistakenly contended that CMI created the training slides and materials. It later corrected that mistake by clarifying that the Crime Lab created them. It maintains, however, that the Crime Lab created them with the use of some information obtained from CMI.

2

evidence has not been addressed for the 9000 as it has been for the 5000.[2] Today, the Court need not resolve whether a burp, belch, or regurgitation during the observation period is foundational or goes to the weight of the evidence due. It need not because the training documents are material to the preparation of Mr. Clark's defense either way.

Mr. Clark's initial criminal discovery request sought, *inter alia*, copies of (1) CMI's user or operator manuals for the 9000, and (2) the Delaware State Police and Dover Police Department user or operator manuals for the device. At oral argument on the motion, the State represented that no CMI-provided operator or maintenance manuals existed. The Court acknowledged the State's good-faith response but expressed skepticism that the manufacturer of a scientific device such as this would market it nationally without providing written standard operating procedures for end-users. As a result, the Court deferred decision on the motion to compel and instructed the State to make further efforts to verify what materials were available.

The State then supplemented its response in a letter to Mr. Clark and copied the Court.[3] In that response, the State confirmed that CMI created no operator's manual for the device.[4] According to a letter attached to the State's response from CMI's President, CMI has not because "[n]umerous law enforcement agencies have elected to create their own agency-specific operator manuals."[5] The State also included an affidavit from the Crime Lab's Director in its response.[6] She attested that the Crime Lab also declined to create an operator or user's manual for the 9000.[7]

---

[2] *See Clawson v. State*, 867 A.2d 187, 192 (Del. 2005) (applying a "bright line rule" that the State "must lay an adequate evidentiary foundation showing that there was an uninterrupted twenty-minute observation of the defendant prior to testing [by the Intoxilyzer 5000]").
[3] D.I. 15.
[4] *Id.* at ¶ 1.
[5] *Id.*, Ex. A.
[6] *Id.*, Ex. B.
[7] *Id.* at ¶ 4.

At that point, the State represented mistakenly that CMI had created the training slides and provided them to the Crime Lab. Finally, in the same letter, the State refused to produce the slides in discovery but gave no reason as to why.[8]

Mr. Clark then renewed his motion and asked the Court to perform an in camera review of the materials that the State had identified but refused to produce.[9] Mr. Clark reiterated that the documents were material to preparing his defense in light of a video that confirms that he belched during the twenty-minute observation period.

The Court then ordered the State (1) to produce the slides for an in camera review, and (2) to explain why it believed the documents were privileged by letter response to the Court.[10] In response, the State provided a series of slides for Court review. In its cover letter, it relied upon Superior Court Criminal Rule 16(b)(2)(A)'s exception to criminal discovery when opposing production.[11] In total, the State contended that the documents were privileged under copyright law because (1) the State did not create them, (2) they are "internal operator training" materials for the 9000, and (3) CMI's copyrights make them privileged.[12]

Several days later, the State filed an amended response supplementing its prior disclosures. There, the State explained that the Crime Lab—not CMI—authored the documents.[13] The State nevertheless maintained its position that because CMI provided some of the information that the Crime Lab included in its slides, only one unredacted reference to the twenty-minute observation period should be disclosed to

---

[8] I*d.* at ¶ 5.
[9] D.I. 17.
[10] D.I. 18.
[11] D.I. 19.
[12] *Id.* at 1.
[13] D.I. 23 at 1.

the defense. Again, other than relying on CMI copyright protection as a justification, the State provided no further explanation regarding why.[14]

## STANDARDS

Criminal discovery has been described as broad,[15] but is more restrictive than civil discovery. Superior Court Criminal Rule 16 provides the categories of documents that the State must produce. Relevant to this case, the Rule requires disclosure of the following:

> papers, documents . . . or copies or portions thereof, that are within the possession, custody or control of the state and that are material to the preparation of the defendant's defense.[16]

The defendant bears the initial burden of demonstrating that materials sought under the Rule are discoverable.[17]

Rule 16 continues by exempting work-product and other privileged materials from disclosure. Namely, the following are not subject to disclosure under Rule 16(b)(2)(A):

> reports, memoranda, or other internal state documents prepared by the state or its agents in connection with the investigation or prosecution of the case that may reasonably be considered confidential, privileged, or subject to the attorney work-product doctrine.

It is the State that bears the burden of demonstrating that this exception shields material from production under Rule 16.[18]

---

[14] *Id.*

[15] *See Valentin v. State*, 74 A.3d 645, 649 (Del. 2013) ("We interpret Rule 16's discovery requirements broadly.").

[16] Super. Ct. Crim. R. 16(b)(1)(E).

[17] *See State v. McCurdy*, 2010 WL 546499, at *2 (Del. Com. Pl. Feb. 3, 2010) ("The burden is on the defendant to show that the requested items are material to the preparation of his defense.") (citing *State v. Johnson*, 2001 WL 34083582, at *3 (Del. Super. April 27, 2001))).

[18] *See Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *2 (Del. Super. Feb. 2, 2011) ("The party asserting a privilege bears the burden of proving that it applies to the documents or communications in question." (citing *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992))).

## ANALYSIS

The Court reviewed the slides presented in camera. It first evaluated them to determine whether they fell within a category of discoverable documents under Rule 16. Then, it considered whether the documents were separately shielded from protection by the work-product doctrine or other privilege.

As to the first question, Rule 16(b)(1)(E) makes documents subject to disclosure if they are (1) within the custody or control of the State, and (2) material to the preparation of the accused's defense. Here, the answer to both questions is yes for the following reasons.

As to custody or control, the State incorrectly focused at first on the mistaken belief that CMI had created the documents, which the State seemed to contend, in turn, divested the Crime Lab of control over them. The State then revised its position to clarify that the Crime Lab created the documents. Whether or not CMI created the documents misses the mark in either event. Rather, the central question is whether the State or its agent currently possesses or controls the documents. Clearly, the Crime Lab, which is associated with a state law enforcement agency, now possesses and controls the slides.

Turning to the question of materiality, the inquiry begins by recognizing that the 9000 is a scientific device that provides *per se* evidence of impairment. The materials reference the twenty-minute observation period in multiple locations. They also include written statements that confirm that the Crime Lab uses the slides to train officer-operators on the device. Moreover, they include references to other operational requirements for administering the tests. They also include a sample certification card that the Crime Lab issues to officers who complete the training.

Upon review, the documents are material to the preparation of Mr. Clark's defense in two ways. First, State policy makes the twenty-minute observation period relevant, and the documents reference that observation period. Moreover,

6

those references make all of the slides material because preparing a defense based upon a mandatory observation period should be considered in the wider context of the 9000's operational guidelines.[19]   Second, they are material to the preparation of a defense for a broader reason.  That is, an accused has the right to confirm and challenge whether the administering officer operated the machinery correctly for the purpose of contesting the result's reliability.  Due process requires no less.  A defendant, such as Mr. Clark, would be left unable to confirm whether an officer performed the test to standard without reviewing the standards.

On balance, apparently, the only written operating guidelines relevant to Delaware's use of the 9000 are the slides and documents that the State produced for in camera review.  Mr. Clark deserves the opportunity to review those documents to prepare for cross-examination of the administering officer and to test the State's position that the officer properly operated the machine.  For these reasons, the entirety of the documents produced in camera are discoverable under Rule 16(b)(1)(E).

The final inquiry settles on whether the State can shield these documents from disclosure.  The State contends that an unspecified portion of the information in the slides come from CMI-copyrighted material that must be protected under Rule 16(b)(2)(A).  For the following three reasons, the State's justification does not qualify for the exception.

---

[19] *See State v. Brown*, 352 A.3d 328, 351 & n.175 (Del. Super. 2025) (observing, after a thorough evidentiary hearing, that the 9000 requires a twenty-minute pre-test observation period and reciting the State Chemist's testimony in a pretrial hearing acknowledging the same).  The 9000 may very well internally compensate for such deficiencies by confirming the validity of the sample. Nevertheless, that does not change the fact that the training materials provide for a twenty-minute observation period and other operational requirements that an operator must follow when administering the test.  The documents are material to the defense against a driving under the influence charge prosecuted with a 9000 result.

First, the exception applies to work-product and work-product is not implicated by operator training materials. The operative phrase in the exception clarifies that it applies only to "documents prepared by the state or its agents in connection with the investigation or prosecution of a case."[20] Here, the Crime Lab used the materials to train the Dover officer well in advance of the investigation and prosecution of Mr. Clark. Accordingly, this threshold deficiency is singularly dispositive.

Second, a *third-party's* alleged rights could not fall within this exception. Simply put, there is a standing issue when the State relies on CMI's rights to shield documents that are so clearly material to the preparation of Mr. Clark's defense.[21] For this additional reason, any unspecified and alleged copyright protection due CMI does not justify the State's refusal to produce otherwise discoverable materials.

Third and finally, even if a third-party's copyrights could impact the State's obligation to produce the documents, the State fails to justify what information contained in the Crime Lab's slides and training materials would violate CMI's rights. In fact, the cover page of the slides recites *only* that "this material is used for training purposes by the DSP Crime Lab and *may* contain information under copyright by CMI Inc." Furthermore, the letter submitted by CMI's President supports no copyright infringement because he identifies State and local purchasers as the ones who establish operational guidelines for the machine.[22] Lastly, the argument misinterprets copyright protection at a basic level. At most, the slides are a compilation of State-agency and manufacturer operational practices. While compilations may enjoy copyright protections, the underlying facts in a compilation

---

[20] Super. Ct. Crim. R. 16(b)(2)(A).
[21] The State neither identified nor alleged any harm that could befall it by disclosing this information.
[22] D.I. 15, Ex. A.

do not.[23]  The do's and don'ts in the proper operation of a scientific device used to prosecute a crime are underlying facts that enjoy no such protection.  While the training slides at issue *may* contain some information from some other unspecified documents created by CMI—which contradictorily, the State maintains do not even exist—such  information would be due no copyright protection once the State chose to include it in its training material.[24]

In summary, the State failed to demonstrate that a privilege justifies withholding these documents.  Furthermore, the State cites no Delaware or federal statute, rule, or case authority that would shield these documents because of CMI's rights.   Finally, a protective order restricting dissemination of these materials is inappropriate because the State provides no justification for one.[25]

## CONCLUSION

For the reasons above, Mr. Clark's motion to compel is **GRANTED**.  The State must produce the complete package of materials reviewed by the Court to Mr. Clark within seven (7) days of the date of this Order.

**IT IS SO ORDERED.**

Very truly yours,

/s/ Jeffrey J Clark
Resident Judge

---

[23] Kurtis Kemper, *Fair Use Doctrine Under 17 U.S.C.A. § 107—Directories, Collections, and Compilations*, 110 A.L.R. Fed. 3d § 2 (2026) (explaining that "because copyright protection for compilations of factual material cannot be reconciled with the general principles of copyright laws, such works should be most conducive to fair use"); *see also Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 380 (D. Utah 1991) ("The copyright law does not prevent the disclosure of information or make nonconfidential documents confidential.").

[24] *See City Consumer Servs., Inc. v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (rejecting the argument in civil discovery that business records were not discoverable because they were copyrighted on the ground that they may "constitute fair use" in a civil case).

[25] The State also identifies no basis for designating these documents as restricted designation material under Rule 16 (c).  Nor do the materials fall within a category that could so qualify under the Rule.